# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 10 2019, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

William I. Fine
Indiana Utility Consumer Counselor

Scott C. Franson
Daniel M. Le Vay
Deputy Consumer Counselors
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA-AMERICAN WATER
CO.

David L. Pippen
General Counsel,
Indiana-American Water Co.
Greenwood, Indiana

Peter J. Rusthoven
Nicholas K. Kile
Hillary J. Close
Barnes & Thornburg, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA UTILITY
REGULATORY COMMISSION

Curtis T. Hill, Jr.
Attorney General of Indiana

Patricia C. McMath
Aaron T. Craft
Deputy Attorneys General
Indianapolis, Indiana

Beth E. Heline
General Counsel, Indiana Utility
Regulatory Commission

Jeremy Comeau
Assistant General Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
TOWN OF SCHERERVILLE

J. Christopher Janak
Kristina Kern Wheeler
Bose McKinney & Evans, LLP
Indianapolis, Indiana

David M. Austgen
Austgen Kuiper Jasaitis, P.C.
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana Office of Utility Consumer Counselor, *Appellant-Statutory Representative,* <br><br> v. <br><br> Indiana-American Water Company, Inc., *Appellee-Petitioner,* <br><br> and <br><br> Indiana Utility Regulatory Commission, *Appellee-Administrative Agency,* <br><br> and | May 10, 2019 <br><br> Court of Appeals Case No. 18A-EX-2030 <br><br> Appeal from the Indiana Utility Regulatory Commission <br><br> The Honorable Sarah E. Freeman, Commissioner <br><br> The Honorable David E. Veleta, Senior Administrative Law Judge <br><br> Cause No. 45043 |

Citizens Action Coalition of
Indiana, Inc. and Town of
Schererville, Indiana,[1]

*Appellees-Intervenors.*

**Mathias, Judge.**

[1] Indiana-American Water ("Indiana-American") submitted a plan ("the Plan") to the Indiana Utility Regulatory Commission ("IURC") seeking the IURC's approval of its proposed Customer Lead Service Line Replacement Program ("Replacement Program"). This Replacement Program called for Indiana-American to replace aging lead water lines owned by Indiana-American customers if the customer agreed to the replacement. In exchange, the Plan would allow Indiana-American to recoup its expenses by a rate increase. The Indiana Office of Utility Consumer Counselor ("OUCC") objected to certain portions of Indiana-American's Plan. Relevant to his appeal, the OUCC objected to an indemnification and release clause ("the Indemnification Clause") that was included in an attached license agreement ("License Agreement") seeking customer consent to participate in the Replacement Program, which Indiana-American submitted as an attachment to its Plan. The

---

[1] Appellee-Intervenor Citizens Action Coalition of Indiana, Inc., did not file an attorney appearance or brief on appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal. Appellee-Intervenor Town of Schererville, Indiana filed a Notice of Intent to Not File an Appellee's Brief, which was accepted by this court on January 11, 2019.

IURC approved Indiana-American's Plan but found that the License Agreement and its Indemnification Clause were not part of the submitted Plan. Thus, the IURC declined to make a determination as to whether the terms of the Indemnification Clause were appropriate. The OUCC appeals the IURC's order and presents two issues for our review, one of which we find dispositive and restate as whether the IURC erred in finding that the License Agreement and Indemnification Clause were not part of the Plan.

We reverse and remand.

# The Parties

## A. Indiana-American

Indiana-American is a corporation that provides water utility services to approximately 300,000 customers in various communities throughout Indiana. Indiana-American, like most water utility companies, owns the water mains and lines that deliver water up to the customer's property, usually to the water meter located near the property line. The customer, however, owns and is responsible for the water line that delivers the water from the meter to the customer's home or other building.

## B. The IURC

The Indiana General Assembly created the IURC primarily as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature. *NIPSCO Indus. Grp. v. N. Ind. Pub. Serv. Co.*, 31 N.E.3d 1, 5 (Ind. Ct. App. 2015) (citing *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d

1012, 1015 (Ind. 2009)); *see also* Ind. Code § 8-1-1-2 (establishing the IURC). The IURC's role is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of Indiana. *NIPSCO Indus. Grp.*, 31 N.E.3d at 5. The IURC only can exercise power conferred upon it by statute. *Id.* The IURC's "authority also 'includes implicit powers necessary to effectuate the statutory regulatory scheme.'" *Id.* (quoting *U.S. Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 795 (Ind. 2000)). Indiana Code section 8-1-3-1 provides for direct appeal from the IURC to this court.[2] *See Office of Util. Consumer Counselor v. Citizens Tel. Corp.*, 681 N.E.2d 252, 255 n.1 (Ind. Ct. App. 1997).

## C. The OUCC

[5] The General Assembly also created the OUCC, which can "place itself in the shoes of the public for purposes of hearings and appeals" before the IURC. *Citizens Tel. Corp.*, 681 N.E.2d at 255 n.1; *see also* Ind. Code § 8-1-1.1-2 (creating the OUCC). Pursuant to Indiana Code section 8-1-1.1-4.1:

> (a) The consumer counselor may appear on behalf of ratepayers, consumers, and the public in:

---

[2] This statute provides in relevant part:

> Any person, firm, association, corporation, limited liability company, city, town, or public utility adversely affected by any final decision, ruling, or order of the commission may, within thirty (30) days from the date of entry of such decision, ruling, or order, appeal to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions . . . .

I.C. § 8-1-3-1.

> (1) hearings before the [IURC], the department of state revenue, or the Indiana department of transportation;
>
> (2) appeals from the orders of the [IURC], the department of state revenue, or the Indiana department of transportation; and
>
> (3) suits and actions in a court that may involve rates for service, services, extensions, and contracts for service, valuations of utilities, applications of utilities for authority to issue securities, applications for mergers and sales, and in all other proceedings, including proceedings before federal agencies, and suits and actions in which the subject matter of the action affects the consumers of a utility, motor carrier, or railroad doing business in Indiana.
>
> (b) The counselor shall decide whether to appeal an order of the [IURC], the department of state revenue, or the Indiana department of transportation and may on the counselor's own motion initiate an appeal.

Ind. Code § 8-1-1.1-4.1

## Facts and Procedural History

[6] It is common knowledge that lead is a dangerous neurotoxin. As recent events in Flint, Michigan have shown, lead in drinking water is a serious public health concern. As noted above, Indiana-American owns the water service lines up to the point of the customer's property, and the customer owns the water service lines located on his or her property. Thus, to fully address the risk that lead from service lines might leach into the water supply, a water utility cannot simply replace its water mains and lines; instead, the customer-owned service lines must be tested for lead and replaced if they could contaminate the

customer's water supply. In fact, replacing only the utility-owned portion of the service lines can counterintuitively make the situation worse and *increase* the lead in water supply. Replacing a customer-owned water service line is not trivial task and can cost a customer hundreds, if not thousands, of dollars.

[7] To address these concerns, and to allow water utilities to replace customer-owned portions of lead service lines, the General Assembly enacted Indiana Code chapter 8-1-31.6, which became effective on July 1, 2017. This chapter allows water utilities to petition the IURC for permission to implement a plan to replace customer-owned lead services lines, even though these lines are not owned by the utility, and to recover its expenses through a rate adjustment. *See* Ind. Code § 8-1-31.6-6(b), (c). Before a water utility may do so, it must first submit a plan to the IURC for approval.

[8] Pursuant to Indiana Code section 8-1-31.6-6(a)(8), a utility's proposed plan must include:

> The water utility's proposal for:
>
> (A) communicating with the customer the availability of the water utility's plan to replace the customer owned portion of the lead service line in conjunction with the water utility's replacement of the utility owned portion of the lead service line; and
>
> (B) documenting the customer's consent or lack of consent to replace the customer owned portion of the lead service line.

[9] On January 29, 2018, Indiana-American petitioned the IURC for approval of its customer-owned lead service line Replacement Plan. In doing so, Indiana-

American submitted its Plan to the IURC, and attached to the plan were examples of Indiana-American's proposed customer communications materials. To comply with the statutory requirements listed above, Indiana-American's Plan includes the following provisions:

8. Indiana American's Communication and Documentation Proposal

* * *

Indiana American's Communication Plan

Indiana American has developed a comprehensive communication plan for communicating with customers regarding lead and drinking water.

Lead and Drinking Water Information

Indiana American has created a webpage on its customer website, www.indianaamwater.com, in the Water Quality tab, discussing lead and drinking water. Topics on the webpage include: water treatment and corrosion control; results from lead sampling; assessing exposure to lead; minimizing exposure to lead; home treatment for lead; and testing water for lead. Additional information from outside sources is also included on the webpage. The webpage link is: https://amwater.com/inaw/water-quality/lead-and-drinking-water.

Communication Plan for Customers with Lead Service Lines

Indiana American has developed a comprehensive communication plan for informing customers about project work and about lead and drinking water. The communication also informs customers about lead service lines, and steps for identifying and replacing lead services lines in conjunction with Indiana American work. Communications are described in the sections below. Examples of referenced communication materials are attached in the Appendices of this plan.

3. <u>Customer License Agreement to Replace Customer Owned Lead Service Line, and Lead Fact Sheet</u>

Indiana American personnel or consultant representatives share by mail, or in person, the customer owned water service line replacement license agreement entitled "<u>Water Service Line Replacement</u>". Indiana American personnel or consultant representatives share details about the work and schedule and answer any questions in person or by telephone.

*The license agreement describes the work, the schedule, a 12-month workmanship warranty,* **indemnification provisions,** *the provisions that the service line will continue to be owned and maintained by the customer*, and acknowledgements by the customer, including an acknowledgment that they have received and read the "<u>Important Notice About Your Water</u>" and the "<u>Lead</u>" fact sheet, which is given to them at this time. The "<u>Lead</u>" fact sheet describes lead and drinking water, health effects, exposures to lead, ways to minimize exposure to lead, testing for lead, frequently asked questions, and further contact information.

The customer can agree to permit Indiana American to replace their lead service line by signing the license agreement. The customer can also decline to permit Indiana American to replace their lead service line, and sign the acknowledgement indicating they decline. If the customer declines to sign the acknowledgement, all relative safety and educational materials will be left with the customer, Indiana American will document the customer's choice, and will maintain that information in its records. Indiana American also maintains copies of signed license agreements.

* * *

*All documents listed above are attached to this Plan* and listed as "Communication Materials Included with Customer Lead Service Line Replacement Plan".

Appellant's App., pp. 36–37, 65 (emphases added).

[10]    The documents listed above and attached to the Plan were admitted into evidence at the IURC's hearing on Indiana-American's petition to approve its plan. One of these documents, entitled "Water Service Line Replacement," is a proposed license agreement (the "License Agreement") between Indiana-American and the customer who owns the lead service line. This License Agreement includes the Indemnification Clause, which provides as follows:

> IN CONSIDERATION FOR PERFORMING THE WORK TO INSTALL THE CUSTOMER SERVICE LINE AT COMPANY'S COST AND THE COMPANY'S AGREEMENT TO PROVIDE A 12-MONTH LIMITED WORKMANSHIP WARRANTY, CUSTOMER AGREES TO INDEMNIFY, RELEASE AND HOLD HARMLESS COMPANY AND ITS AFFILIATES AND AGENTS FROM AND AGAINST ALL CLAIMS, LIABILITY AND COSTS ("CLAIMS") RESULTING FROM ACTS AND OMISSIONS OF COMPANY AND/ OR ITS APPROVED SUBCONTRACTORS IN INSTALLING THE CUSTOMER SERVICE LINE.

*Id.* at 75.

[11]    On April 13, 2018, the OUCC filed its response to the Plan. The OUCC objected to the inclusion of the Indemnity Clause in the License Agreement. The OUCC argued that any costs associated with a risk of liability for damages should have been included in Indiana-American's estimate of the costs of replacing the customer-owned lines and that Indiana-American's customers should not be held responsible for damage caused by Indiana-American or its

contractors. *See* Ex. Vol., Public's Ex. 1, p. 17. Thus, the OUCC asked that the IURC reject the Indemnity Clause.

[12] Indiana-American responded on April 23, 2018, noting that it already uses indemnification provisions when restoring private property after construction projects. It also noted that it was offering to replace customer-owned lead service lines at no cost to the customer, including a one-year warranty. Thus, under the Plan, customers were to receive a benefit with no direct costs that they would not otherwise get without the Plan. Indiana-American also argued that the Indemnification Clause allowed it to calculate its risks, and without such language, would be unable to reliably estimate its liability under the Plan.

[13] On July 25, 2018, the IURC issued its Order, which is the subject of the instant appeal. With regard to the Indemnification Clause, the Order provides:

> E. Indemnification. [The OUCC] objected to the inclusion of an indemnification provision in the standard contract that Indiana American will use when it replaces a customer owned lead service line. *Because the specific provisions of the contract are not part of the Plan that we are being asked to approve, we therefore decline to make a determination whether the terms of a particular indemnification provision are appropriate or not.*

Appellant's App., p. 18. The OUCC now appeals.

## Standard of Review

[14] Our standard from decisions of the IURC is governed by Indiana Code section 8-1-3-1, which provides:

> Any person, firm, association, corporation, limited liability company, city, town, or public utility adversely affected by any final decision, ruling, or order of the commission may, within thirty (30) days from the date of entry of such decision, ruling, or order, appeal to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions, except as otherwise provided in this chapter and with the right in the losing party or parties in the court of appeals to apply to the supreme court for a petition to transfer the cause to said supreme court as in other cases. An assignment of errors that the decision, ruling, or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling, or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered.

[15]   In interpreting this statute, our courts have held that "[a] multiple-tier standard of review is applicable to the IURC's orders." *Citizens Action Coal. of Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 70 N.E.3d 429, 438 (Ind. Ct. App. 2017) (quoting *Citizens Action Coal. of Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 45 N.E.3d 483, 491 (Ind. Ct. App. 2015)). Pursuant to this tiered standard:

> A court on review must inquire whether specific findings exist as to all factual determinations material to the ultimate conclusions; whether substantial evidence within the record as a whole supports the findings of fact; and whether the decision, ruling, or order is contrary to law.

*Id.*

[16]   In applying this standard:

> [w]e review the conclusions of ultimate facts, or mixed questions of fact and law, for their reasonableness, with greater deference to matters within the IURC's expertise and jurisdiction. Additionally, [w]e neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the IURC's findings. On matters within its jurisdiction, the IURC enjoys wide discretion and its findings and decision will not be lightly overridden simply because we might reach a different decision on the same evidence.

*Id.* at 438–39 (citations and internal quotation marks omitted).

# Discussion and Decision

[17] The OUCC claims that the IURC erred by finding that the Indemnification Clause was not part of the Indiana-American's Plan. The OUCC notes that the Indemnification Clause was submitted to the IURC as part of the Plan, was referred to by Indiana-American's own witnesses as part of its Plan, and was directly referenced in the Plan. Thus, the OUCC argues that the proposed License Agreement that included Indemnification Clause was clearly part of the proposed Plan Indiana-American submitted to the IURC. We agree.

[18] First, it is clear that Indiana-American included the Indemnification Clause in the License Agreement it submitted to the IURC. Pursuant to Indiana Code section 8-1-31.6-6(a)(8)(B), Indiana-American was required by statute to include in its Plan a proposal for "documenting the customer's consent or lack of consent to replace the customer owned portion of the lead service line." In that portion of its Plan dealing with this requirement, Indiana-American stated that it would provide to its customers a line-replacement license agreement that

would "describe[] the work, the schedule, a 12-month workmanship warranty, **indemnification provisions**, the provisions that the service line will continue to be owned and maintained by the customer . . . ." Appellant's App., p. 37 (emphasis added). Indiana-American attached to its Plan its proposed License Agreement which included the Indemnification Clause.

[19] Thus, Indiana-American submitted the License Agreement with its Indemnification Clause to the IURC as part of its Plan to fulfill its statutory obligations. This strongly indicates that the License Agreement, with its Indemnification Clause, was part of Indiana-American's Plan. And the text of the Plan itself directly refers to the "indemnification provisions" that Indiana-American would include in its license agreement with the customers, effectively incorporating by reference the License Agreement and Indemnification Clause into the Plan itself.

[20] In addition, Indiana-American's own evidence demonstrates that the License Agreement and its Indemnification Clause were intended to be part of its Plan. Specifically, the testimony of Indiana-American's Director of Engineering includes the following question and answer:

> Q. Please describe <u>Attachment GMV-1</u> [the License Agreement].
>
> A. <u>Attachment GMV-1</u> *is the Customer Lead Service Line Replacement Plan* that has been prepared by Indiana American Water as required under House Enrolled Act 1519.

Ex. Vol., Petitioner's Ex. 2, p. 6 (emphasis added)

Thus, Indiana-American's initial position before the IURC was that the License Agreement and its Indemnification Clause were part of Indiana-American's Plan. Only after the OUCC objected to the Indemnification Clause did Indiana-American claim that the License Agreement was not part of its Plan, in clear contradiction to its own submitted evidence.

In short, there was no evidence to suggest that the License Agreement, including its Indemnification Clause, was not part of Indiana-American's submitted Plan. To the contrary, the evidence points only to a conclusion other than that reached by the IURC: that the Indemnification Clause was part of the Plan. The controlling statute requires Indiana-American to include in its Plan its proposal for documenting a customer's consent to participate in the Replacement Program. To fulfill this statutory obligation, Indiana-American's Plan states that it will send to its customers a license agreement which includes, among other terms, "indemnification provisions." Attached to the Plan was the License Agreement that included the Indemnification Clause. And Indiana-American's own witness testified that the License Agreement, and therefore the Indemnification Clause included therein, was part of the Plan. Under these facts and circumstances, we can only conclude that the IURC erred by finding that the License Agreement, including its Indemnification Clause, was not part of the Plan submitted by Indiana-American.

## Conclusion

We reverse the order of the IURC and remand for proceedings consistent with this opinion. We express no opinion on the propriety of the License Agreement

and the Indemnity Clause. We hold only that the License Agreement and Indemnity Clause were part of the Plan submitted by Indiana-American that, accordingly, the IURC must either approve or disapprove the License Agreement and Indemnity Clause.

[24] Reversed and remanded.

Vaidik, C.J., and Crone, J., concur.